# EXHIBIT A

RIGHTHAVEN™ sm



# COPYRIGHT ALLIANCE AGREEMENT

THIS COPYRIGHT ALLIANCE AGREEMENT (THIS "AGREEMENT") IS MADE AND ENTERED INTO THIS _27 ½_ DAY OF _SEPTEMBER_, 2010 ("EFFECTIVE DATE") BY AND BETWEEN RIGHTHAVEN LLC, A NEVADA LIMITED-LIABILITY COMPANY ("RIGHTHAVEN") AND MEDIANEWS GROUP, INC., A DELAWARE CORPORATION ("PUBLISHER").

In consideration of the covenants, representations and warranties set forth herein and for other good and valuable consideration, the receipt and sufficiency to which Righthaven and Publisher hereby covenant, Righthaven and Publisher hereby agree as follows:

### 1. INCORPORATION OF TERMS, CONDITIONS & DEFINITIONS.

Schedule 1, attached hereto and incorporated herein, sets forth the remaining terms and conditions ("Terms & Conditions") as well as controlling definitions of this Agreement set forth in Schedule 1A.

### 2. SEARCH SERVICES.

During the Term, Righthaven shall use reasonable and diligent efforts to conduct periodic searches of the Internet in order to assess effectively whether Accessed Content relating to the Subject Publications has been the subject of Unauthorized Reproductions. Righthaven shall provide Publisher with timely and appropriately detailed written reports of potential infringements that reflect Righthaven's automated searches and substantiality and fair use evaluations.

### 3. INFRINGEMENT NOTIFICATIONS.

During the Term, Publisher shall Promptly Notify Righthaven of any known Unauthorized Reproduction of Previous Relevant Published Content and/or any Assigned Copyrights relating to the Subject Publications listed in Schedule 6 to this Agreement (the "Subject Publications").

### 4. CONTENT ACCESS.

Within sixty (60) days after the Effective Date, Publisher shall provide to Righthaven at no charge in an Approved Content Format all Previous Relevant Published Content relating to the Subject Publications. Commencing not later than  the sixty-first (61st) day after the Effective Date and on every Business Day thereafter throughout the Term, Publisher shall provide to Righthaven all New Published Content relating to the Subject Publications (not previously provided by Publisher to Righthaven) that was Published by Publisher in the previous forty-eight (48) hours; provided, however that if provision of such New Published Content  is not fully automated by Publisher and the Business Day is

**RIGHTHAVEN**sm

a Monday, then Publisher shall provide to Righthaven all such New Published Content (not previously provided by Publisher to Righthaven) that was Published by Publisher in the previous seventy-two (72) hours.

5. *ASSIGNMENT & LICENSE BACK.*

During the Term, Publisher shall assign, pursuant to the procedures set forth in Section 4 of the Terms & Conditions all Content relating to the Subject Publications, that: (a) is the subject of a Found Infringement, or (b) is the subject of a reasonable assessment by Publisher that is the kind of Accessed Content that is typically the subject of a material risk of imminent infringement (the "Assigned Copyrights").

6. *PURSUIT OF RESOLUTIONS.*

Righthaven hereby grants to Publisher the benefits of the Castle Plan with the fees waived for that plan during the entirety of the Term of this Agreement and any renewal thereof. Righthaven shall perform the number of Engagements pursuant not to the Standard Engagement Matrix as set forth on Schedule 2 but rather as set forth on Schedule 3, provided, however, these Engagement requirements shall only apply with respect to infringements that would give rise to statutory copyright damages.

7. *RESOLUTION PAYMENTS.*

Within one (1) week after receipt of any Recovery, Righthaven shall pay to Publisher fifty percent (50%) of the Recovery minus Costs advanced or incurred by Righthaven related to, with respect to or arising out of the preparation for, conduct of and ultimate resolution of the Infringement Action and/or Disposition. Costs incurred with respect to any particular Infringement Action and/or Disposition shall only be deducted with respect to said particular Infringement Action and/or Disposition and shall never be applied to or rolled over to any other Infringement Action and/or Disposition. Under no circumstances shall Publisher be responsible to Righthaven for Costs in the absence of a Recovery with respect to any particular Infringement Action and/or Disposition.

8. *MARK LICENSE OPTION.*

If Publisher elects the License Plan by separately executing Schedule 4 (the "Castle Mark License") where indicated and otherwise complying with the terms thereof, then Publisher shall be entitled to the use of the Castle Mark pursuant to the terms and provisions of the Castle Mark License. If Publisher elects the Castle Plan by separately executing Schedule 3 where indicated and complying with the terms thereof, then Publisher shall automatically be entitled to the use of the Castle Mark pursuant to the terms and provisions of the Castle Mark License at no additional fee. The fees that customarily constitute the Castle Plan fees as customarily forth on the Castle Plan will be waived in full for the entire Term of this Agreement and any renewal thereof.

2

RIGHTHAVEN℠



### 9. ESTABLISHED ALLIANCE COVENANTS.

Publisher covenants, represents and warrants that: (a) throughout the Term, Righthaven shall be the only provider of Competitive Services to Publisher with respect to the Subject Publications; (b) throughout the Term, Publisher shall not enter into any Contract with any Person for the provision to Publisher of any such Competitive Services by such Person for Publisher; (c) with respect to any Found Infringements relating to the Subject Publications, Publisher shall, whether during or at any time after the Term, provide to Righthaven the first right to pursue an Engagement ("Right Of First Refusal") against any and all such Found Infringements; (d) whether during or at any time after the Term, as liquidated damages, if Publisher breaches Section 9(c), Publisher shall be required to make a payment equal to fifty percent ( 50%) of any Recovery (minus Costs) with respect to any Action taken by Publisher with respect to a Found Infringement relating to a Subject Publication in contravention of this Agreement and such payment shall be made by Publisher within five (5) days after the occurrence of any such Recovery with respect to any such Found Infringement; and (e) if Righthaven does not elect the Right of First Refusal with respect to any such Found Infringement (such non-election with respect any particular such Found Infringement known herein as a ("First Right Declination"), and Publisher achieves a Recovery with respect to any such Found Infringement that was the subject of a First Right Declination, then Publisher shall pay, within five (5) days after the occurrence of any such Recovery with respect to any such Found Infringement, thirty percent (30%) of any such Recovery (minus Costs) to Righthaven.

### 10. REASSIGNMENT.

Subject to Section 9, upon Publisher's signed, written request ("Reassignment Request"), Righthaven shall, within twenty (20) Business Days of any Reassignment Request, submit reassignment documentation to the United States Copyright Office in order to effect reassignment of any copyright requested by Publisher so long as such request does not interfere with any pending litigation. Nothing in this Section 10 shall, in any way, diminish Righthaven's rights to funds pursuant to, or arising out of this, Agreement.

### 11. RESOLUTION TERMS.

Righthaven shall effect all settlements, out of court, in such a manner whereby a written settlement agreement shall be entered into whereby further such settlement agreement provides for the bilateral confidentiality (subject to reasonable disclosures arising out of compulsion by way of, *inter alia*, subpoena) of the terms of the settlement agreement as well as provision that no settlement shall be of any precedential value regarding any possible prospective action by any claimant.

[SIGNATURE PAGE FOLLOWS]

RIGHTHAVEN℠



### 12. COPYRIGHT REGISTRATIONS.

Publisher acknowledges that Righthaven will pursue, in Righthaven's own name, copyright registrations with respect to each Copyright Assignment provided that the copyright that is the subject of said Copyright Assignment is already not the subject of a registration. The Parties shall use reasonable efforts during the Term to make most efficient the logistical management of effecting proactively the administration of copyright registrations for each of the Subject Publications, with respect to all of their copyrightable content, en mass, on a routine schedule, whereby such en mass registration are made no less frequently than monthly.

IN WITNESS WHEREOF, EACH OF THE UNDERSIGNED DULY EXECUTE THIS AGREEMENT AND REPRESENT THAT EACH HAS THE AUTHORITY TO LEGALLY BIND EACH RESPECTIVE ENTITY.

RIGHTHAVEN                                              PUBLISHER

By: _____        By: _____
Name:  Steven A. Gibson                        Name:  Joseph J. Lodovic, IV
Title:    Chief Executive Officer                Title:    President

4

**RIGHTHAVEN**<sup>sm</sup>



## SCHEDULE 1 – TERMS AND CONDITIONS

*1.* Righthaven shall take an Infringement Action against relevant Infringers as required by this Agreement in order to effect a Disposition within one (1) year of the later of (a) the procurement of a copyright registration covering the Assigned Copyright or (b) if such registration already exists, within six months after the Effective Date; provided, however, that if Righthaven elects to contact Infringer prior to any Infringement Action and achieves a suitable Recovery, then Righthaven shall not be required to take an Infringement Action; provided further, that if Righthaven discovers Content that provides Righthaven with a good faith based belief that the Infringer is not an infringer of the Assigned Copyright, then Righthaven shall have no duties to take any Infringement Action or pursue a Disposition.

*2.* Publisher shall never disclose to any Person (other than an Authorized Person), or as otherwise required by any applicable law, regulation, or order of any governmental entity having jurisdiction over Publisher of any of the terms, provisions or other aspects of this Agreement whether during the Term or at any time thereafter.

*3.* Subject to Section 7, Righthaven shall be responsible for all Costs incurred in an Infringement Action; provided, however, that Costs shall not include the salaries or other compensation to Righthaven employees associated with or arising out of work performed arising out of or in association with this Agreement nor shall Costs include any sums that are allocable generally to overhead such as

rent or other costs of general operations.

*4.* Subject to the other terms and provisions of this Agreement and throughout the Term, Publisher shall effect the assignments to Righthaven of copyrights as required by this Agreement (including, without limitation, within the time periods required by this Agreement) by executing a particularized assignment with respect to each copyright and each consistent with (and in form and substance the same as) the scope of assignment as set forth in the form of copyright assignment as embodied in Schedule 5 (each a "Copyright Assignment"). Publisher shall provide Notice to Righthaven of each copyright (each a "Notified Copyright") that is required to be the subject of a Copyright Assignment (a "Copyright Assignment Notice") by no later than five (5) Business Days prior to the last day upon which each respective Copyright Assignment is required to be executed by Publisher. Righthaven shall then provide to Publisher a conforming Copyright Assignment for Publisher to execute with respect to each Notified Copyright within three (3) Business Days after receipt of the Copyright Assignment Notice.

*5.* Except as set forth in Section 2 of this Agreement, Righthaven shall not have any obligation to Discover any particular or all possible Infringements.

*6.* Despite any Copyright Assignment, Publisher shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Publisher Assigned Copyrights for any lawful purpose whatsoever and Righthaven shall have

5

**RIGHTHAVEN**[sm]

no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Publisher Assigned Copyrights other than the right to proceeds in association with a Recovery. To the extent that Righthaven's maintenance of rights to pursue infringers of the Publisher Assigned Copyrights in any manner would be deemed to diminish Publisher's right to Exploit the Publisher Assigned Copyrights, Righthaven hereby grants an exclusive license to Publisher to the greatest extent permitted by law so that Publisher shall have unfettered and exclusive ability to Exploit the Publisher Assigned Copyrights. Righthaven shall have no obligation to protect or enforce any Work of Publisher that is not Publisher Assigned Copyrights.

7. Publisher hereby represents, warrants and covenants as of the Effective Date and throughout the Term:

    7.1 The execution, delivery and performance of this Agreement by Publisher does not and shall not violate any of Publisher's organizational documents, any applicable Law, or any Contractual or other obligation of Publisher or any Order to which Publisher is bound.

    7.2 Publisher is the owner of the Publisher's Assigned Copyright. The Assigned Copyright is free and clear of all liens and Encumbrances. Publisher further represents and warrants that it has the exclusive right to use the Assigned Copyright, and has the exclusive right to exclude others from using the Assigned Copyrights. Publisher further

warrants that, as of the Effective Date, Publisher has no knowledge of any third-party Claim that any aspect of Publisher's present or contemplated business operations infringes or will infringe any rights in any of a third Person in Assigned Copyrights.

7.3 Publisher shall not sell, grant any Encumbrance on or in, or assign, any of Assigned Copyright to any third Person during the Term absent prior written approval of Righthaven.

7.4 Publisher shall not reduce, adjust, settle or compromise any infringement of Assigned Copyright except as approved in writing by Righthaven.

7.5 Publisher shall cooperate fully and candidly with Righthaven with respect to the Infringement Action and shall take all commercially reasonable actions necessary in order to effect the terms and provisions of this Agreement.

7.6 Publisher shall provide all Content in whatsoever Media known, or available to, Publisher that may aid Righthaven in the conduct of an Infringement Action, including, without limitation, privileged or confidential Content in any and all Media, subject only to any legal prohibition by any governmental agency against its doing so

7.7 Publisher shall execute such authorizations as may be required by third Persons in order to release Content in any Media

6

RIGHTHAVEN℠

whatsoever to Righthaven to aid Righthaven in an Infringement Action.

7.8 Righthaven has not made any express or implied warranties or representations that the Services provided by Righthaven shall result in any particular amount or level of income to Publisher.

7.9 All Assigned Copyrights exist in compliance with all laws.

8. Any Recovery Instrument shall be written in a manner as to require the endorsement of Righthaven to be properly endorsed prior to any distribution.

9. Righthaven is hereby authorized to act as attorney-in-fact for Publisher and to endorse any Recovery Instrument in Publisher's name for deposit into the Righthaven's bank account for collection and final distribution pursuant to the terms of this Agreement. Publisher shall deliver any Recovery Instrument received by Publisher to Righthaven for endorsement and deposit into Righthaven's account.

10. If Publisher uses, disburses, deposits or takes any other action with respect to any Recovery Instrument in contravention of this Agreement, the Sums with respect to such Recovery Instrument shall be deemed held in trust to be distributed pursuant to the terms of this Agreement.

11. Publisher understands and acknowledges that Publisher and Righthaven may be liable for an Infringer's attorneys' fees as required by Law in connection with an Infringement Action. Publisher further understands that a lawsuit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process. If any Claim made by an Infringer in an Infringement Action results in Losses, other than Losses described in Section 12 hereof, Righthaven shall be solely liable for such Losses and shall indemnify Publisher from and against any such Losses but only if such Losses do not arise out of a misrepresentation by Publisher or other breach by Publisher of a provision of this Agreement.

12. If any Claim made by an Infringer in an Infringement Action results in Losses, and such Losses are attributable to Publisher's breach of the representations and warranties contained in this Agreement, then Publisher shall be solely liable for such Losses and shall indemnify Righthaven from and against any such Losses.

13. RIGHTHAVEN DISCLAIMS ALL IMPLIED WARRANTIES AND/OR REPRESENTATIONS AND MAKES NO WARRANTIES OR REPRESENTATIONS AS TO ANY PARTICULAR OUTCOME OF ANY INFRINGEMENT ACTION.

14. RIGHTHAVEN SHALL NOT BE HELD LIABLE TO ANY PARTY ON ACCOUNT OF OR DUE TO BREACH OF THIS AGREEMENT IN OR FOR ANY AMOUNT THAT EXCEEDS, IN THE AGGREGATE, ONE THOUSAND DOLLARS ($1,000) AND RIGHTHAVEN SHALL NOT BE LIABLE TO PUBLISHER (NOR TO ANY PERSON CLAIMING ANY RIGHT, TITLE OR INTEREST DERIVED FROM OR AS SUCCESSOR TO THE PUBLISHER'S RIGHT, TITLE AND INTEREST) FOR INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND

RIGHTHAVEN℠

INCLUDING, WITHOUT LIMITATION, LOST REVENUES OR PROFITS, LOSS OF BUSINESS OR LOSS OF CONTENT ARISING OUT OF THIS AGREEMENT, IRRESPECTIVE OF WHETHER THE PARTY HAS ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

15. Publisher shall indemnify and hold Righthaven harmless from and against all Losses incurred by Righthaven with respect to or arising out of any Claim brought by any third Person against Righthaven based upon any act or omission (whether directly or indirectly) by Publisher, including without limitation, any act or omission stemming from or arising out of this Agreement.

16. If any provision of this Agreement should be held to be void or unenforceable, in whole or in part, by a court of competent jurisdiction, then such court shall correct the defect in a narrowly tailored manner to approximate the manifest intent of the Parties.

17. This Agreement represents the entire understanding between Righthaven and Publisher.

18. All the defined terms as set forth in Schedule 1A, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense as the context may require.

19. This Agreement and any Dispute shall be interpreted and enforced in accordance with the laws of the State of Nevada without regard to its conflict of law principles.

20. The Parties hereby submit to the non-exclusive personal jurisdiction of the state and federal courts present in Clark County, Nevada and in the state of Colorado with respect to any Dispute.

21. The term of this Agreement (the "Term") shall commence on the Effective Date and shall end on the anniversary of the Effective Date, but shall renew for one-year periods thereafter (which shall be deemed part of the Term) unless either Party provides to the other Party sixty (60) days prior written notice of termination of any such period of time. In addition, at anytime after commencement of the second one-year period of such Term (assuming the Term of this Agreement is extended beyond one year) either party to this Agreement may terminate it upon sixty (60) days prior written notice to the other.

22. During the Term and for a period of one (1) year subsequent thereto, neither Party shall make any attempt to solicit for employment any current employee of the other Party without the prior written consent of such Party.

8

RIGHTHAVEN™ 

## SCHEDULE 1A – DEFINITIONS

"**Action or Proceeding**" shall mean any action, suit, proceeding, arbitration or Government Authority investigation.

"**Accessed Content**" shall mean all Content provided to Righthaven by Publisher with respect to the following newspapers set forth on Schedule 6 so long as said newspapers remain owned by Publisher (and such other newspapers as mutually agreed by Publisher and Righhaven in a signed writing from time to time), and otherwise pursuant to and arising out of Agreement.

"**Agreement**" shall mean this Copyright Alliance Agreement. Righthaven Standard Content Protection and Publisher ship Agreement.

"**Approved Content Format**" shall mean a format indicated by Righthaven, from time to time, that reasonably effects the provision of Content by Publisher to Righthaven.

"**Assigned Content**" shall mean any works assigned by Publisher to Righthaven pursuant to this Agreement.

"**Business Day**" shall mean shall mean any day, Monday through Friday, excepting Saturday and Sunday and also excepting any day on which federal chartered banks situated in Clark County, Nevada are generally not open for business.

"**Castle Plan**" shall mean the resolution structure set forth in Schedule 3.

"**Castle Mark**" shall mean the mark RIGHTHAVEN and any design specifically designated from time to time by Righthaven.

"**Claim**" shall mean any demand, cause of action or claim of whatsoever nature.

"**Competitive Services**" shall mean the determination of an Unauthorized Reproduction of any Content with respect to the Subject Publications owned by Publisher either prior to or after the Effective Date and/or the pursuit of an Infringement Action with respect thereto other than through engagement of a duly licensed attorney at law.

"**Content**" shall mean all material, information, documents, matter, text, data, graphics, computer-generated displays and interfaces, images, photographs and works of whatsoever nature, including, without limitation, all compilations of the foregoing and all results and/or derivations of the expression of the foregoing.

"**Contract**" shall mean any contract or agreement of any nature whatsoever whether expressed, implied or constructive.

"**Copyright Assignment**" shall mean the form of Assignment of Copyright attached hereto as Schedule 5.

"**Costs**" shall mean any and every direct, out-of-pocket expenditure made on the part of Righthaven with respect to an Infringement Action, including, without, limitation, reasonable and necessary attorneys fees to counsel not employed by Righthaven prosecuting such action, court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance telephone charges, court filing fees, mailing costs, parking fees expenses incident to travel by Righthaven representatives related to the Infringement Action, including air and ground transport, lodging, and meals, and other disbursements made directly in connection with the Infringement Action.

"**Develop**" shall mean develop, conceive, reduce to practice, create, or otherwise arise

9

RIGHTHAVEN℠

out of efforts in any manner whatsoever and through any means whether now known or hereafter developed.

"**Development**" shall mean the result of an act of Developing.

"**Disposition**" shall mean the final disposition of an Infringement Action through settlement, compromise, judgment and/or the execution and delivery of a Recovery Instrument by an Infringer with respect to, related to or otherwise associated with the Assigned Copyright.

"**Dispute**" shall mean any controversy or other matter with respect to, or arising out of this Agreement.

"**Effective Date**" shall mean the date first entered in this Agreement.

"**Encumbrance**" shall mean any security interest, pledge, hypothecation, lien or other encumbrance of whatsoever nature.

"**Engagements**" shall mean the undertaking of an Infringement Action.

"**Exhibit**" shall mean any document attached hereto denoted as an exhibit, which by reference made herein shall be deemed incorporated herein by such reference.

"**Exploit**" shall mean to use, make, sell, or otherwise exploit in any manner whatsoever (through any means now known or hereafter Developed).

"**Found Infringement**" shall mean an unauthorized reproduction of any Access Content relating to the Subject Publications that is ascertained by either the Publisher or Righthaven.

"**Intellectual Property**" shall mean all foreign, federal, state and common law trademarks, service marks, patents, copyrights, trade secrets, universal resource locators, domain names, trade dress, mask works, know how, show how, proprietary information and other intangible asset, as well as all applications for registration or issuance and registrations and issuances relating thereto and arising there from.

"**Infringement Action**" shall mean an action commenced in a United States federal district court against one or more Infringers related to, arising from, or concerning the validity, enforcement, preservation or enforcement of Assigned Copyright brought by Righthaven regardless of whether this Agreement is terminated or any rights or licenses pursuant to or arising from this Agreement are terminated.

"**Infringement Action Costs**" shall have the meaning attributed to such term in Section 3.

"**Infringer**" shall mean a Person presently infringing, or hereafter infringing any Assigned Copyright.

"**License Plan**" shall mean the licensing schedule set forth in Schedule 4.

"**Losses**" shall mean any and all costs, expenses, fees (including, without limitation, reasonable attorneys', accountants', investigators', witnesses' and professionals' fees), charges, expenditures, liabilities, damages and other losses of whatsoever nature.

"**Media**" shall mean print, document-based medium, television, facsimile, telex, telephony, radio, satellite, cable, wire, computer-based network, network, magnetic means, optical means, electronic means, Internet, intranet, software, compact and laser disc, digital video displays, video cassettes, and multi-media and any other method (now known or hereafter developed) for the publication, retention, conveyance, possession or holding of Content.

"**New Published Content**" shall mean Content owned by the Publisher relating to the Subject Publications and published by Publisher on or after the Effective Date.

"**Righthaven**" shall mean Right*haven* LLC, a Nevada limited liability company.

"**Notify**" shall mean to give notification in a writing signed by an authorized representative of the relevant party.

"**Parties**" shall mean both Righthaven and

10

RIGHTHAVEN[sm]

Publisher.

"**Party**" shall mean either Righthaven or Publisher.

"**Person**" shall mean any natural person, corporation, limited-liability company, limited partnership, partnership, trust, association, organization or other entity of whatsoever nature.

"**Previous Relevant Published Content**" shall mean Content owned by the Publisher and published by Publisher prior to the Effective Date relating to the Subject Publications.

"**Promptly**" shall mean promptly but in no event longer than two weeks.

"**Published**" shall mean the subject of a "publication" as defined in the United States Copyright Act 17 U.S.C. Section 101.

"**Publisher**" shall refer to the Person named in the forepart of this Agreement.

"**Recovery**" shall mean any and all Sums received, transferred to, assigned, conveyed, paid or otherwise obtained by Publisher and/or Righthaven relating to, arising or resulting from (whether directly or indirectly) a Disposition, including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to or arising from an Infringement Action.

"**Recovery Instrument**" shall mean any instrument or any other Content in any Media which evidences a right, title or interest in and to the Sums with respect to, related to or arising out of the Recovery.

"**Schedule**" shall mean an enumerated schedule all of which shall be deemed attached hereto and incorporated herein by way of the specific reference or references made in this Agreement.

"**Section**" shall be deemed a reference to an enumerated provision of this Agreement.

"**Standard Engagement Matrix**" shall mean the resolution structure set forth in Schedule 2.

"**Sums**" shall mean all monies, sums, consideration, receivables, asset and other things (whether tangible or intangible) of value of whatsoever nature as well as all proceeds of any and/or all of the foregoing.

"**Unauthorized Reproductions**" shall mean any Content owned by Publisher relating to the Subject Publications that is reproduced, displayed or published by any Person without authorization from Publisher.

"**Work**" shall have the meaning defined in the U.S. Copyright Act of 1976, as amended.

11

**RIGHTHAVEN**™sm



### SCHEDULE 2 - STANDARD ENGAGEMENT MATRIX

**Righthaven shall effect Engagements relating to the Subject Publications based upon the following estimated found Infringements Publisher, in good faith, believes will occur throughout the Term:**

| Tier | Estimated Infringements | Required Engagements |
|------|------------------------|---------------------|
| Tier One: | 0- 12 | 4 |
| Tier Two: | 13-50 | 12 |
| Tier Three: | 51-120 | 20 |
| Tier Four: | 121-240 | 24 |
| Tier Five: | 241-500 | 28 |
| Tier Six: | 501 or more | 36 |

12

RIGHTHAVEN™ ℠ 

### SCHEDULE 3 - CASTLE PLAN

Upon Publisher's signature below, based upon the estimated found Infringements Publisher, in good faith, believes will occur throughout the Term, Righthaven shall be required to effect throughout the Term Engagements in the number corresponding to each Tier (provided that there are in fact sufficient found Infringements to permit such Engagements and provided that Publisher's estimates of Infringements were in good faith and reasonable and otherwise subject to the other terms and provisions of this Agreement):

| Tier | Estimated Infringements | Customary Castle Plan Fees (All of Which Are Being Waived During the Term of this Agreement) | Required Engagements |
|---|---|---|---|
| Tier One: | 0- 12 | $50 | 4 |
| Tier Two: | 13-50 | $200 | 12 |
| Tier Three: | 51-120 | $500 | 25 |
| Tier Four: | 121-240 | $1000 | 32 |
| Tier Five: | 241-500 | $2500 | 43 |
| Tier Six: | 501 or more | $5000 | 60 |

# RIGHTHAVEN℠



## SCHEDULE 4 - CASTLE MARK LICENSE

This MARK LICENSE MARK LICENSE AGREEMENT (this "Mark License Agreement") is made and entered into as of _____ ____ (the "Effective Date"), by and between Righthaven LLC, a Nevada limited-liability corporation ("Righthaven") and _____, a _____ ("Licensee").

Pursuant to that certain Copyright Alliance Agreement (the "Alliance Agreement") by and between the Parties and of even date, the Parties hereto agree as follows:

1. ***Definitions and Interpretations***

1.1.  Certain terms used herein shall have the meaning ascribed to such terms as set forth in Schedule CML 1.

1.2.  All the defined terms as set forth in Schedule CML 1, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense.

1.3.  Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

2. ***Grant of License***

Subject to the other terms and conditions of this Mark License Agreement and throughout the Term, Righthaven hereby grants Licensee, a limited, non-exclusive, personal, non-assignable, non-transferable and revocable license to Use the Mark (the "Mark License").

3. ***License Fee***

If Licensee chooses and complies with the terms and provisions of the Castle Plan as set forth in the Alliance Agreement, then the Licensee shall enjoy this Mark License without any further fee.  Otherwise, Licensee shall pay to Righthaven within five (5) days after the Effective Date, a licensee fee based upon the following schedule based upon the estimated copyright infringements Licensee, in good faith, believes will occur throughout the Term and if Licensee's estimates were in error whereby the actual infringements were in a higher tier level, then Licensee shall retroactively, within five (5) days after the end of the Term, pay the higher amount indicated:

14

# RIGHTHAVEN<sup>sm</sup>



| Tier | Estimated Infringements | Mark Fees |
|------|------------------------|-----------|
| Tier One: | 0- 12 | $20 |
| Tier Two: | 13-50 | $50 |
| Tier Three: | 51-120 | $250 |
| Tier Four: | 121-240 | $500 |
| Tier Five: | 241-500 | $1000 |
| Tier Six: | 501 or more | $2000 |

### 4. *Recognition, Maintenance and Protection of Mark*

4.1.   Licensee recognizes and acknowledges the exclusive right, title and interest of Righthaven in and to the ownership of the Righthaven Intellectual Property.

4.2.   All licenses not specifically granted to Licensee herein are expressly reserved by Righthaven.  Licensee neither has nor under any circumstances shall be deemed to have any ownership, right, title or interest in any Righthaven Intellectual Property.

4.3.   Any goodwill associated with or identified by the Mark, or any other Righthaven Intellectual Property shall inure directly and exclusively to the benefit of, and is the property of Righthaven, and all use (whether authorized or unauthorized) of any other indicia of source, mark, logo or slogan by Licensee in the course of promoting or marketing the Mark shall likewise inure directly and exclusively to the benefit and shall be the property of Righthaven.

4.4.   During the Term and thereafter, Licensee shall not: (a) challenge the validity of Righthaven's ownership of, or right to license, the Righthaven Intellectual Property, or any registration, issuance or application for registration or issuance thereof; (b) represent in any manner that it has any title or right to the ownership, registration or use the Mark in any manner except as set forth in this Mark License Agreement; or (c) challenge the right of Righthaven to grant the licenses granted herein.

4.5.   Licensee acknowledges and accepts that the Mark have been, may have been and will potentially be misappropriated by third Persons. Righthaven provides neither any guarantee nor assurance that Righthaven will be able to cause cessation of such misappropriation nor any assurance that such third Persons may fail in an ability to claim superiority of rights with respect to the subject Intellectual Property.

4.6.   Nothing contained in this Mark License Agreement shall be construed to confer upon Licensee any right or license to have any of the Righthaven Intellectual Property registered in the name of Licensee, any of Licensee's Affiliates or any third Person or to vest in Licensee, any of Licensee's Affiliates or any third Person any right, title or interest in and to the Righthaven Intellectual Property, and Licensee shall not, directly or indirectly, register or cause to be registered in any country or governmental subdivision any trademark, trade name, service mark,

15

**RIGHTHAVEN**<sup>sm</sup>



trade dress, Internet domain name, other universal resource locator, patent, mask work or copyright consisting of, embodied in, relating to, arising out of or similar to any of the Righthaven Intellectual Property, which would effect an Encumbrance upon any of the Righthaven Intellectual Property. Licensee shall not damage, do any act or fail to do any act, which could damage, dilute, or modify any of the Righthaven Intellectual Property or permit a third Person to do so.

4.7.   Licensee shall promptly notify Righthaven in writing of any infringement, misappropriation, dilution or other claim of right, title, or interest (or any suspected activity with respect to any of the foregoing) with respect to any of the Righthaven Intellectual Property of which Licensee Knows or otherwise becomes aware (an "Infringement").

4.8.   Licensee shall Use the Mark without any accompanying words or symbols of any nature (save as required by the provisions hereof) unless first approved in writing by Righthaven.

4.9.   Licensee shall neither file any application for registration or other recognition of any name incorporating or embodying in any manner the Mark, or variant thereof, as a fictitious business name nor use the Mark, or variant thereof, as part of its formal entity name (including, without limitation, any corporate, partnership, limited liability company, limited liability partnership, limited partnership or any other formal entity name) or permit any of Licensee's Affiliates or any third Person to do so, unless Righthaven grants such use of the Mark, through its sole and absolute discretion.

5.   *Licensee Restrictive Covenants*

Licensee shall:

5.1.   Not undertake any act or fail to act in any manner which may disparage, diminish, dilute, damage or endanger any Righthaven Intellectual Property or any other right, title, or interest of Righthaven, nor allow any third Person to do so;

5.2.   Not disseminate or use the Mark in any manner other than as provided herein; and

5.3.   Not conjoin the Righthaven Intellectual Property with any other name, service mark, trade name or trademark whatsoever.

6.   *Termination*

In addition to all other rights and remedies available to this Mark License Agreement, at law or at equity, if at any time, _____ subsequent to a Change of Control, _____ breaches any provision of this Mark License Agreement, then _____ shall have the unconditional right to terminate this Mark License Agreement.

16

RIGHTHAVEN<sup>sm</sup>



7. *Applicable Law and Disputes*

This Mark License Agreement shall be governed by the law of the State of Nevada, United States of America without regard for its choice of law rules.

8. *Severability*

In the event that any term or provision of this Mark License Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term or provision and this Mark License Agreement shall be interpreted and construed as if such term or provision, to the extent the same is held to be invalid, illegal or unenforceable, had never been contained herein.

IN WITNESS WHEREOF, the Parties have caused this instrument to be duly executed as of the date first written above.

_____          _____

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____

17

**RIGHTHAVEN**°sm                                                        

## <u>SCHEDULE CML 1 - DEFINITIONS</u>

"Affiliates" shall mean with respect to any Person, a Person which Controls, is Controlled by, or is under common Control with, the subject Person.

"Business Day" shall mean any day, Monday through Friday, excepting Saturday and Sunday and also excepting any day on which federal chartered banks situated in Clark County, Nevada are generally not open for business.

"Change of Control" shall mean any event that causes Licensee to own less than the majority of issued and outstanding voting equity of Licensee.

"Claim" shall mean any demand, complaint, request for redress, assertion of a cause of action or other claim.

"Content" shall mean all material, information, documents, matter, text, data, graphics, computer-generated displays and interfaces, images, photographs and works of whatsoever nature, including without limitation all compilations of the foregoing and all results of the expression of the foregoing whether in a format now known or hereinafter developed).

"Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any Person, or the power to veto major policy decisions of any such Person, whether through the ownership of voting securities, by contract, or otherwise.

"Encumbrance" shall mean any lien, security interest, pledge, hypothecation, mortgage, or other encumbrance of whatsoever nature.

"Government" shall mean the federal government of the United States of America.

"Intellectual Property" shall mean all foreign, federal, state and common law trademarks, service marks, patents, copyrights, trade secrets, universal resource locators, domain names, trade dress, mask works, know how, show how, proprietary information and other intangible asset of whatsoever nature, as well as (a) all applications for registration or issuance and registrations and issuances relating thereto and arising therefrom, (b) all moral rights associated with the foregoing, and (c) all goodwill arising from the foregoing.

"Knows" or "Knowledge" shall mean the knowledge of such Person as well as that Person's Affiliates, shareholders, officers, directors, employees, agents or representatives.

"Laws" shall mean all constitutional, statutory, regulatory, common law and other ordinances and authoritative interpretations of same promulgated by the jurisdiction with power over the

18

**RIGHTHAVEN**<sup>sm</sup>



relevant Person and subject matter.

"Mark" shall mean the mark RIGHTHAVEN and any design specifically designated from time to time by Righthaven.

"Media" shall mean print, optical means, television, telephony, radio, satellite, cable, wire, computer-based network, network, magnetic means, electronic means, Internet, intranet, and any other method (now known or hereinafter devised, invented or created) for the publication of Content, including without limitation, computer software, compact and laser disc, digital video displays, video cassettes, and multi-media means.

"Person" shall mean any natural person, corporation, limited liability company, limited liability partnership, partnership, association, organization, trust, or any other entity whatsoever.

"Righthaven Intellectual Property" shall mean all Intellectual Property owned, held or licensed by Righthaven, including, without limitation, the Mark.

"Schedules" shall be an enumerated schedule all of which shall be deemed attached hereto and incorporated herein by way of the specific reference or references made in this Mark License Agreement.

"Section" shall be deemed a reference to an enumerated provision of this Mark License Agreement.  Section headings are used for convenience only and shall have no interpretive effect or impact whatsoever.

"Term" shall mean the period commencing on the Effective Date and on the date the Alliance Agreement terminates.

"Use" shall mean the applying in a reasonably approved fashion by Righthaven, the Mark on the Licensee's directly-owned website(s) in no greater than a one-inch by one-inch space in the lower right-hand corner of said website.

19

RIGHTHAVEN℠ 

## SCHEDULE 5 - COPYRIGHT ASSIGNMENT

This Copyright Assignment is made effective as of _____, 20___ by _____, a Nevada limited-liability company ("Assignor").

In consideration of monetary commitments and commitments to services to be provided and/or already provided by Righthaven LLC, a Nevada limited-liability company ("Righthaven"), to Assignor and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, vests and assigns the work described in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Righthaven, subject to Assignor's rights of reversion, all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work.

IN WITNESS WHEREOF, Assignor hereby executes this Assignment on this _____ day of _____, 20_____.

_____

By:     _____
Name:   _____
Title:  _____

STATE OF _____
COUNTY OF _____

Subscribed and sworn to before me by this _____ day of _____, 20____.

Notary Public

20

RIGHTHAVEN™ 

## SCHEDULE 6 - SUBJECT PUBLICATIONS

San Jose Mercury News, Contra Costa Times, Denver Post, Pioneer Press,
El Paso Times, LA Daily News, Salt Lake Tribune, Oakland Tribune, Long Beach Press
Telegram and Torrance Daily Breeze